**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLIFFORD WRIGHT, | ) | |
| | ) | CASE NO. 1:05CV2870 |
| Petitioner, | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| DAVID BOBBY, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Clifford Wright ("Wright"), challenges the constitutionality of his conviction in the case of *State v. Wright*, Mahoning County Common Pleas Case No. 01-CR-1234.  Wright, *pro se*, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 13, 2005 with the United States District Court for the Northern District of Ohio.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Wright's petition (Doc. No. 1) be DENIED.

## I.  Procedural Background

**A.    Conviction**

The Mahoning County Grand Jury indicted Wright for one count of Aggravated Robbery in violation of Ohio Revised Code (O.R.C.) § 2911.01(A)(1) with a firearm specification.  (Doc. No. 9-2, Exh. 1.)  Prior to trial, Wright, through counsel Charles Curry, filed a Motion For Remand and Motion To Suppress/Dismiss on the grounds that the victim's identification of Wright was "so highly suggestive" that it resulted in a violation of his Due Process rights.  (Doc. No. 9-2, Exh. 2.)  Wright also sought remand to Juvenile Court because no firearm was produced that could be connected to him.  (Doc. No. 9-2, Exh. 2.)  The trial court held a hearing on the combined motion and it was overruled.  (Doc. No. 9-2, Exh. 3.)

Wright entered a plea of "not guilty."  During the jury trial, after the State rested its case, Wright moved for acquittal pursuant to Crim.R. 29; the motion was overruled.  (Doc. No. 9-2, Exh. 4; Tr. 558.)  On May 2, 2003, Wright was found guilty as charged in the indictment.  (Doc. No. 9-2, Exh. 4.)  On June 30, 2003, Wright was sentenced to eight years imprisonment for the aggravated robbery conviction with a consecutive three year term for the firearm specification. (Doc. No. 9-2, Exh. 5.)

**B.    Direct Appeal**

Wright, represented by attorney Lynn Maro, timely appealed his conviction to the Seventh Appellate District Court of Appeals.  (Doc. No. 9-2, Exh. 6.)  On December 7, 2004, the appeals court found Wright's assignments of error to be without merit.  (Doc. No. 9-6, Exh. 9.) Thereafter, Wright timely appealed his conviction to the Ohio Supreme Court.  (Doc. No. 9-7, Exh. 11.)  On April 27, 2005, the Ohio Supreme Court denied Wright's motion for leave to

2

appeal as not involving any substantial constitutional question. (Doc. No. 9-9, Exh. 12.)

**C.     Application to Reopen Direct Appeal**

On July 27, 2005, Wright filed a *pro se* application to reopen his direct appeal. (Doc. No. 9-9, Exh. 13.) Wright also filed a motion to supplement the record. (Doc. No. 9-9, Exh. 14.) On August 22, 2005, the court denied Wright's application to reopen as untimely and found no good cause for delay. (Doc. No. 9-10, Exh, 15.) It also observed that Wright failed to demonstrate a genuine issue of ineffective counsel of appellate counsel, because counsel actually raised the claims on direct appeal that Wright claimed were never raised. (Doc. No. 9-10, Exh, 15.)

Wright timely appealed to the Ohio Supreme Court. (Doc. No. 9-11, Exh. 16.) On November 23, 2005, the Ohio Supreme Court dismissed Wright's appeal as not involving any substantial constitutional question. (Doc. No. 9-11, Exh. 19.)

**D.     Federal Habeas Petition**

On December 13, 2005, Wright filed a Petition for Writ of Habeas Corpus. (Doc. No. 1.) The asserted grounds for relief are as follows:

> Ground One: The trial court erred when it denied appellant's motion to suppress improperly suggestive pretrial identification which violated appellant's due process rights in contravention of U.S. Const. Amend. XIV.
>
> Ground Two: The trial court erred in permitting the government to use its peremptory challenge in a racially discriminatory manner, thereby denying appellant equal protection under the law as guaranteed by the U.S. Const. Amend. XIV.
>
> Ground Three: Appellant's conviction of the firearm specification was contrary to the law as the government failed to prove beyond a reasonable court that the weapon was operable.
>
> Ground Four: The trial court abused its discretion when it imposed more than the minimum sentence without making factual findings

3

to support the sentence as required by Ohio Revised Code § 2929.14(B) in violation of U.S. Constitution Amend. VII and XIV; Ohio Const. art. I §§ 1, 2, 9 and 16.

Ground Five: The trial court erred when it gave the flight jury instruction which created an improper mandatory presumption of guilt in violation of appellants right as guaranteed by the United States Constitution Amend. V, VI and XIV.

Ground Six: The verdict reached by the jury was against the manifest weight of the evidence and the evidence was insufficient to support the verdict, thus denying appellant's due process rights per united states constitution amend. Xiv and right to a fair trial United States Constitution Amend. VI.

Ground Seven: Appellant was denied his right to a fair trial in violation of United States Constitution Amend. VI and XIV as a result of the cumulative error which occurred throughout the trial.

Ground Eight: [Ohio] Appellate rule 26(b) ineffective assistance of appellate counsel.

Ground Nine: Appellant was deprived of due process of the fourteenth amendment of the federal constitution [w]hen the evidence adduced at trial was against the manifest weight and insufficient as a matter of law on the charged offense of [Ohio] R.C. § 2911.01(A)(1)(C).

(Doc. No. 1.)

## II.  Summary of the Facts

The Ohio Court of Appeals summarized the facts underlying Wright's conviction as

follows:[1]

On July 25, 2001, James Grant was trying to start his wife's car outside an apartment building he managed in Campbell, Ohio.  The car stalled that morning and Grant could not get it to start.  While Grant was in the car, a young man approached him and asked for the time.  After Grant told him it was a little after

---

[1]  Factual determinations by state courts are entitled to a presumption of correctness. *See, e.g., House v. Bell*, 283 F.3d 37 (6th Cir. 2002).

4

seven, the man pulled out a revolver, pointed it at Grant, and demanded the car. Grant both told and demonstrated to the man that the car would not start. The man then told Grant that the gun was not real and walked away.

Grant called 911 and described the man who robbed him to the operator.  Within minutes, an officer arrived on the scene and Grant began describing the man to him as well.  Another officer found a man fitting Grant's description near the scene while Grant was talking to the officer.  That man was Wright. Grant heard that they had found a suspect on the first officer's radio.  The officer then left to help capture the suspect, who had run away. The officers eventually found Wright in a local residence.  The gun was never recovered.

After arresting Wright, an officer brought him back to the scene of the crime.  At this time, which was within an hour of the crime, Grant positively identified Wright as the man who robbed him.  Grant saw that Wright was wearing the same distinctive clothing he was wearing at the time of the robbery.

Since Wright was a minor at the time of the crime, the State filed a delinquency complaint in the Mahoning County Juvenile Court.  That court transferred jurisdiction to the court of common pleas and the Mahoning County Grand Jury indicted Wright for aggravated robbery with a firearm specification.

Wright moved to suppress Grant's identification of him as the offender, claiming the procedure used was so highly suggestive that there was a substantial likelihood of misidentification.  After a hearing, the trial court denied this motion.

The case proceeded to a jury trial.  While seating the jury, the prosecutor exercised a peremptory strike against an African-American juror.  Wright argued that the prosecutor was engaging in purposeful racial discrimination.  The trial court disagreed and allowed the prosecutor to strike this juror.

At the conclusion of the trial, the jury found Wright guilty of both aggravated robbery and the firearm specification.  At the sentencing hearing, the trial court sentenced Wright to an eight-year term of imprisonment and ordered that term be served consecutive to and after a three-year term for the firearm specification.

*State v. Wright*, Mahoning App. No. 03MA112, 2004-Ohio-6802; 2004 Ohio App. LEXIS 6305

(Ohio Ct. App. Dec. 7, 2004) (Doc. No. 9-6, Exh. 9.)

### III.  Procedural Default

Respondent asserts that Wright has procedurally defaulted on the following alleged

5

claims: (1) racially discriminatory use of peremptory challenge by the prosecution; (2) use of an improper jury instruction that created a presumption of guilt; (3) his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence; (4) cumulative error deprived him of his right to a fair trial; and (5) ineffective assistance of appellate counsel.

## A.      Standard

Before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court.  *See* 28 U.S.C. §2254(b)(1).  A federal habeas court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to procedural default or waiver.  *Wainright v. Sykes*, 433 U.S. 72 (1977).  Failure to fairly present the federal claim to the state courts, especially if the petitioner is barred from returning to state court with it, waives the claim for purposes of federal habeas corpus review.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Fields v. Bagley*, 275 F.3d 478, 482 (6th Cir. 2001) ("If the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[, then] there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."), *quoting Coleman v. Thompson,* 501 U.S. 722 (1991).  Where petitioner could have raised a claim in the state courts, but that claim is now barred by state rules, that claim is considered procedurally defaulted.  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986).  Any claim which a petitioner defaulted in state court cannot be examined by federal habeas corpus review,

unless the petitioner can demonstrate cause for the default and prejudice or actual innocence. *See Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Murray*, 477 U.S. at 488; *Wainwright*, 433 U.S. at 87 (1977).

Procedural default can occur when the petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error. Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state law ground exists for upholding the conviction or sentence. *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991). The denial of an appeal for non-compliance with the time limit prescribed by the state is an adequate and independent state ground. *Id.* at 751.

The procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Specifically, the Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Id.* at 138. Second, the Court must decide whether the state courts actually enforced its procedural sanction. *Id*. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). Fourth,

7

the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")

**B.      Ground Eight: Ineffective Assistance of Appellate Counsel**

Wright alleges that his appellate counsel was constitutionally ineffective.  (Doc. No. 1.) This particular claim was first raised by Wright in his application to re-open his direct appeal pursuant to Ohio Appellate Rule 26(B) ("Rule 26(B)").[2]  Wright's Petition contains no argument or explanation with respect to this assignment of error.  Wright's Traverse, though lengthy, offers little clarification.  (Doc. No. 9 at 148-153.)  It appears Wright is dissatisfied with the argument appellate counsel made in support of his claim that his pretrial identification was improperly suggestive.  (Doc. No. 13 at 150.)  He also appears dissatisfied with appellate counsel's argument with regard to the sufficiency of the evidence.  (Doc. No. 13 at 150.)  These ill-defined arguments largely mirror his arguments from his Application to Re-Open his Direct Appeal.  (Doc. No. 9-9, Exh. 13.)  Curiously, Wright does appear to concede, however, that "[a]ppellate counsel['s] arguments would not and did not have [a] chance of success that would

---

[2]  Rule 26(B) allows a criminal defendant to "apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of *appellate counsel*." (emphasis added).

have caused reversal of the conviction ...." (Doc. No. 13 at 152.)

The state appellate court found that Wright's application to re-open pursuant to Rule 26(B) was not timely filed. (Doc. No. 9-10, Exh. 15.) Rule 26(B) requires an application made under the rule to be filed within ninety (90) days of journalization of the appellate judgment. Wright argued to the state court, as he does before this Court, that he could not timely file his Rule 26(B) petition because his appellate counsel did not provide him with records from the trial proceedings until February 21, 2005. (Doc. No. 13 at 22-25, 161.) The state appellate court found that Wright had not demonstrated good cause for the delay and observed that Wright did not even file his application within ninety days of receiving the records. (Doc. No. 9-10, Exh. 15.) The state appellate court found that "Wright's failure to demonstrate good cause is a sufficient basis for denying the application for re-opening."[3] (Doc. No. 9-10, Exh. 15.)

Thus, under the *Maupin* test, Wright's failure to timely allege his ineffective assistance of appellate counsel claim is an applicable procedural rule that Wright failed to follow. Although the state appellate court opined that Wright's application would have been denied anyway, the state enforced its procedural sanction. The mere fact "that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of *Strickland* prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected." *James v. Brigano*, 470 F.3d 636, 641 (6th Cir. 2006) (citations omitted). The denial of an appeal for non-compliance with the time limit

---

[3] The state appellate court also observed that it "would be forced to deny Wright's application to reopen even if he had filed it in a timely manner" because appellate counsel "made each of the arguments which Wright now claims that counsel never made." (Doc. No. 9-10, Exh. 15.)

prescribed by the state is an adequate and independent state ground.  *See Coleman,* 501 U.S. at 751; *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 431 (6th Cir. 2006).

Wright's procedural default may be excused if he shows cause for the procedural default and prejudice from the alleged error.  *See Maupin*, 785 F.2d at 138.  Alternatively, Wright's procedural default may excused if he "demonstrate[s] that 'in light of all the evidence, it is more likely than not that no reasonable jury would have convicted him.'" *Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998), *quoting Bousley v. United States*, 523 U.S. 614 (1998). Wright argues that he could not timely file his Rule 26(B) petition because his appellate counsel did not provide him with records from the trial proceedings until February 21, 2005.  (Tr. 22-25.) The state court of appeals did not find this reason persuasive for excusing his failure to comply with the timeliness requirements of Rule 26(B).  (Doc. No. 9-10, Exh. 15.)  Similarly, this Court finds that Wright's explanation is insufficient to excuse his procedural default.  Further, Wright has failed to demonstrate actual innocence.  Therefore, Wright's ineffective assistance of appellate counsel claim should be denied because it is procedurally defaulted.

**C.     Claims Raised On Direct Appeal Before the Court of Appeals But *Not* Raised Before the Supreme Court of Ohio**

Wright raised the following claims on direct appeal before the Court of Appeals for Mahoning County: (1) racially discriminatory use of peremptory challenge by the prosecution; (2) use of an improper jury instruction that created a presumption of guilt; (3) his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence;[4] and

---

[4]  Because grounds three, six and nine of Wright's petition all essentially allege that his conviction was not supported by sufficient evidence, was against the manifest weight of the evidence, or was not proven beyond a reasonable doubt, these claims will be treated as one claim.

(4) cumulative error deprived him of his right to a fair trial.  It is undisputed that Wright never

raised these claims on direct appeal to the Supreme Court of Ohio.  (Doc. No. 9, Exhs. 7 & 11.)

Respondent asserts that Wright's failure to raise the claims before the Supreme Court of Ohio

renders such claims procedurally defaulted.  (Doc. No. 9-1 at 9-10.)

Wright has failed to exhaust the remedies available to him in state court as required by 28

U.S.C. §2254(b)(1)(A).  *Res judicata* applies to both constitutional claims that *could have been*

*raised* in a direct appeal, as well as to constitutional claims that *could have been raised* in any

post conviction proceeding.  *See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998)

(emphasis added), *citing State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding

that post-conviction relief is not available by virtue of the doctrine of *res judicata* to address

constitutional claims that could have been raised on direct appeal from the conviction and

sentence).  Because these claims could have been raised before the Ohio Supreme Court but

were not, his claims would now be barred in that court by *res judicata* and are considered

procedurally defaulted.  *See Murray*, 477 U.S. at 485; *Fields*, 275 F.3d at 482 (Claim is

procedurally defaulted if the petitioner failed to exhaust state remedies and the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claims procedurally barred.)  In such a situation, a petitioner is considered to

have waived the claim for federal habeas purposes "unless he can demonstrate cause for the

procedural default and actual prejudice resulting from the alleged constitutional error." *Rust v.*

*Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A federal court may consider a petitioner's procedurally defaulted claims if the petitioner

can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.  *See Teague*, 489 U.S. at 298-99; *Coleman*, 501 U.S. at 750.  Wright,

however, has failed to show cause for the default.  In his Traverse, Wright alleges that the

"cause" for his default is that he "cannot be held responsible for appellate counsel['s] failure to

timely submit each and every claim or constitutional claims before the OHIO SUPREME

COURT...."  (Doc. No. 13 at 12-24.)

Wright's assertion that he cannot be held accountable for his appellate counsel's mistakes

or decisions is contrary to established federal law.  The United States Supreme Court has

observed as follows:

> We think, then, that the question of cause for a procedural default does not turn on
> whether counsel erred or on the kind of error counsel may have made.  So long as
> a defendant is represented by counsel whose performance is not constitutionally
> ineffective under the standard established in *Strickland v. Washington* ... we
> discern no inequity in requiring him to bear the risk of attorney error that results
> in a procedural default....
>
> Ineffective assistance of counsel, then, is cause for a procedural default.
> However, we think that the exhaustion doctrine, which is "principally designed to
> protect the state courts' role in the enforcement of federal law and prevent
> disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518
> (1982), generally requires that a claim of ineffective assistance be presented to the
> state courts as an independent claim before it may be used to establish cause for a
> procedural default.  The question whether there is cause for a procedural default
> does not pose any occasion for applying the exhaustion doctrine when the federal
> habeas court can adjudicate the question of cause -- a question of federal law --
> without deciding an independent and unexhausted constitutional claim on the
> merits.  But if a petitioner could raise his ineffective assistance claim for the first
> time on federal habeas in order to show cause for a procedural default, the federal
> habeas court would find itself in the anomalous position of adjudicating an
> unexhausted constitutional claim for which state court review might still be
> available.  The principle of comity that underlies the exhaustion doctrine would
> be ill served by a rule that allowed a federal district court "to upset a state court
> conviction without an opportunity to the state courts to correct a constitutional
> violation," *Darr v. Burford*, 339 U.S. 200, 204 (1950), and that holds true whether
> an ineffective assistance claim is asserted as cause for a procedural default or

12

denominated as an independent ground for habeas relief.

*Murray v. Carrier*, 477 U.S. 478, 488-489 (1986); *accord Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2686 at note 6 (2006) ("Under our system, an attorney's lack of knowledge does not excuse the defendant's [procedural] default, unless the attorney's overall representation falls below what is required by the Sixth Amendment."); *Edwards v. Carpenter*, 529 U.S. 446 (U.S. 2000) (The [*Carrier*] doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it.)

In his Rule 26(B) petition before the state court, Wright never alleged that his appellate counsel was ineffective for raising only two claims before the Supreme Court of Ohio and thereby omitting five additional claims raised before the state appellate court.  (Doc. No. 9-9, Exh. 13.)  Thus, Wright's claim is defaulted as it was never raised in state court and would now be barred by *res judicata*.

Also, the allegedly defective performance of Wright's appellate counsel with respect to the discretionary appeal filed before the Ohio Supreme Court cannot serve as "cause" to excuse his procedural default.  Only a performance that is constitutionally deficient under the *Strickland* standard can serve as "cause" for procedural default.  *See Carrier*, 477 U.S. at 488-489. However, Wright had no constitutional right to counsel on his appeal to the Ohio Supreme Court.  *See Ross v. Moffitt*, 417 U.S. 600, 610 (1974) ("We do not believe that the Due Process Clause requires [a state] to provide respondent with counsel on his discretionary appeal to the State Supreme Court."); *accord Halbert v. Michigan*, 545 U.S. 605 (2005)  The Sixth Circuit has held that "[w]here the defendant has no right to counsel, he cannot be deprived of the effective

13

assistance of counsel." *Washpun v. United States*, 109 Fed. Appx. 733, 735 (6th Cir. 2004).

Therefore, Wright's argument that his appellate counsel's failure to raise certain claims before

the Supreme Court of Ohio constitutes "cause" excusing his procedural default is without merit.

Lastly, Wright has neither asserted that he is actually innocent, nor has he satisfied the

fundamental miscarriage of justice exception, as he has not submitted evidence showing that a

constitutional violation has resulted in the conviction of one who is actually innocent. *See, e.g.,*

*Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the foregoing reasons, Wright's claims for relief as stated in grounds two, three, five,

six, seven, and nine of his Petition should be dismissed.

## IV.  Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Wright filed

his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320,

326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Federal courts are bound by a state court's determination of a petitioner's claims, unless

14

the decision by the state court involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998).  In *Williams v. Taylor*, 529 U.S. 362, 411 (2000), the Supreme Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Stated differently, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  The Court noted that the term "unreasonable" is "no doubt difficult to define," but did not expound on the word's meaning in this context, instead stating that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning."  *Id*. at 410.  The Sixth Circuit interprets the *Williams* test to mean if a court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one."  *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

**A.**     **Ground One: Improperly Suggestive Pretrial Identification**

Wright claims that his due process rights were violated when the trial court denied his motion to suppress his pretrial identification, which Wright alleges was improperly suggestive. (Doc. No. 1.)  Wright argues that he was presented for identification to James Grant, the victim, after being identified as a "suspect."  Wright further avers that he was the sole person in the back of the police cruiser when Grant identified him.

The Due Process Clause prohibits the use of identifications that, under the totality of the circumstances, are impermissibly suggestive and present an unacceptable risk of irreparable

15

misidentification.  *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375 (1972).  "A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986), *quoting Simmons v. United States*, 390 U.S. 377, 384 (1968).  The paramount issue is whether the suggestiveness so undermines the reliability of the identification as to offend due process.  *See Foster v. California*, 394 U.S. 440 (1969).

A court looks to the reliability of the identification in determining its admissibility; if an identification is reliable, it will be admissible even if the confrontation procedure was suggestive.  *See Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199.  Following *Biggers*, a court shall consider the following factors in evaluating reliability:  1) the opportunity of the witness to view the defendant at the initial observation; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the defendant; 4) the level of certainty shown by the witness at the pretrial identification; and 5) the length of time between the initial observation and the identification.  *Id*. at 199-200.  The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14.

The state appellate court's decision in this matter did not unreasonably apply the clearly established federal law under a *Biggers* analysis.   The state appellate court specifically noted that Wright stood less than a foot away from Grant, who was sitting in his car.  (Doc. No. 9-6,

16

Exh. 9).  Thus, Grant had good opportunity to view Wright at the time of the offense.  The state

appellate court cited the transcript from the suppression hearing where Grant testified that the

perpetrator was "a tall, black fellow.  He was wearing a black kind of jacquard shirt, like Florida

shirt, short pants and a baseball cap."[5]  (Doc. No. 9-6, Exh. 9; Doc. No. 15-2 at 14.)  The court

found that Grant described Wright in a "reasonably specific amount of detail."  (Doc. No. 9-6,

Exh. 9.)  Generally, a court  places greater trust in witness identifications made during the

commission of a crime because the witness has a reason to pay attention to the perpetrator.  *See

United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention

where witness spoke with robber and studied his features while looking for an opportunity to

escape); *U.S. v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of

attention where robber confronted witnesses with a gun).

The state appellate court found that Grant was certain Wright was the same man who

attempted to rob him.  Grant testified that the suspect was wearing the same clothes, had the

same face, and that he was "the same person, [Wright], in the courtroom today."  (Doc. No. 15-2

at 19-20.)  Also, Grant identified Wright a mere fifteen minutes after the crimer – an

insignificant lapse of time that certainly does not bar an otherwise reliable identification.  (Doc.

No. 9-6, Exh. 9.)  *Cf. Crozier*, 259 F.3d at 512 (a five-year time lapse does not operate to bar an

otherwise reliable identification); *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir.1987)

(holding three- to four-month delay does not render identification inherently unreliable).  The

state appellate court's application of the *Biggers* analysis was reasonable.

---

[5]  Grant further testified at the suppression hearing that the description he gave to 911
was of a "black male, brown short pants, a print shirt, black and brown print shirt, and a baseball
cap..."  (Doc. No. 15-2 at 17.)

In addition, upon review of the transcript, the Court disagrees with Wright's contention that Grant's prior description of him was inaccurate.  Nothing in the suppression hearing testimony suggests that there was any uncertainty on the part of Grant in identifying Wright as his assailant.  Wright cites alleged inconsistencies in the trial transcript with respect to his identification, though none of these are material and they do not taint Grant's identification.[6]

The state appellate court's finding – that Grant's identification of Wright was not impermissibly suggestive – was the result of a reasonable application of federal law.  As such, Wright's claim for relief as stated in ground one of his petition should be denied.

## V.  Claims Not Cognizable

Respondent asserts that Wright's fourth ground for relief is not cognizable for habeas corpus review because it presents an issue solely based on state law.   (Doc. No. 9-1 at 12-13.) Specifically, Wright's fourth ground for relief alleges that the trial court abused its discretion by imposing more than the minimum sentence without making factual findings to support the sentence as required by Ohio R.C. § 2929.14(B).  (Doc. No. 1.)  Wright avers that such failure violates the federal Constitution's Seventh and Fourteenth Amendments as well as the Article I of the Ohio Constitution.  (Doc. No. 1.)

A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v.*

---

[6]  For example, the shirt worn by Wright at the time of his apprehension is described by various witnesses as a "Jacquard" shirt, a "Florida" shirt, a "printed" shirt, a "flower print" shirt, and a "Hawaiian" shirt.  Wright ascribes significant weight to these various descriptions. However, the mere fact that Grant's description of Wright's shirt was not identical to the myriad of descriptions proffered by others does not detract from the reliability of Grant's identification. Moreover, there is a thread of consistency in all the descriptions proffered.

*McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on

the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  However,

if the error is so egregious as to amount to a denial of fundamental fairness or of other federal

rights, the federal court may grant the habeas petition.  *See id.*  A perceived error of state law is

characterized by the petitioner's reliance on state statutory or case law to assert his claim.  *See*

*Estelle*, 502 U.S. at 68.  Typically, "alleged errors of state evidentiary rules are not cognizable in

habeas corpus cases," unless the improper application of the state law violates the petitioner's

constitutional rights.  *Rimmer-Rey v. Foltz*, 917 F.2d 25, 1990 WL 163265, *2 (6th Cir. 1990)

(unpublished opinion); *see also Moore v. Tate,* 882 F.2d 1107, 1109 (6th Cir. 1989); *Shakoor v.*

*Collins*, 63 F. Supp. 2d 858, 864-865 (N.D. Ohio 1999) ("a federal habeas court does not act as

an additional appellate court to review state law and procedure, and that federal habeas courts

may reverse state court convictions only when there has been a constitutional error in the state

court proceedings, or an error in state law 'so egregious as to deny fundamental fairness in the

trial process.'") (citations omitted).

A.      **Ground Four: Failure to Comply with the Ohio Constitution and Ohio R.C. §
        2929.14 and Violations of the United States Constitution**

        Wright's claims that his sentence was contrary to the Ohio Constitution and not in

compliance Ohio R.C. § 2929.14(B) are not cognizable claims in this Court.  It is the function of

the Supreme Court of Ohio to interpret the Ohio Constitution and the duly enacted laws of the

Ohio legislature.  A federal court may only issue a writ of habeas corpus on the basis of a

perceived error of state law if the error is tantamount to a denial of fundamental fairness or of

other federal rights.  *Pulley*, 465 U.S. at 41.  The state court of appeals specifically found that the

19

trial court made the required factual findings at Wright's sentencing hearing by stating that Wright's likelihood of recidivism merited a sentence greater than the minimum.  (Doc. No. 9, Exh. 9.)  Wright has not demonstrated that there was an error of state law, and, more importantly, has failed to demonstrate that the error, if one occurred, was so egregious as to amount to a denial of fundamental fairness.  The Court sees no error in the state appellate court's finding, nor any ensuing deprivation of fundamental fairness.

Wright also claims that his sentence violated the seventh and fourteenth amendments of the United States Constitution.  (Doc. No. 1.)  Wright argues that there was no scientific evidence that the gun was real or operable; and, therefore, the evidence was insufficient on the firearm specification.  (Doc. No. 13 at 114.)  This argument, however, merely rehashes Wright's argument in ground three that there was insufficient evidence to convict him of the firearm specification.  As discussed above, ground three is procedurally defaulted.

Wright's claim for relief as stated in ground four should be denied.

## VI.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Wright's petition (Doc. No. 1) be DENIED.

/s/ Nancy A. Vecchiarelli<br>
U.S. Magistrate Judge

Date: April 5, 2007.

20

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).